## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO. 19-548** |
| | : | |
| **DIMITRE HADJIEV** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                **May 14, 2020**

Dimitre Hadjiev, a criminal defendant who has been detained pending trial, is charged with money laundering in violation of 18 U.S.C. § 1956(a)(3)(B); failure to file a record of a financial transaction, in violation of 31 U.S.C. § 5324(b)(1); structuring a transaction to evade reporting requirements in violation of 31 U.S.C. § 5313; and attempted trafficking of counterfeit goods in violation of 18 U.S.C. § 2320(a)(1).[1] The essential allegations against Hadjiev are that he purchased stolen luxury watches and structured the payments to avoid federal reporting requirements by keeping them under $10,000. Hadjiev now moves the Court for temporary pretrial release based on the COVID-19 pandemic.

### I.        BACKGROUND AND PROCEDURAL HISTORY

On August 29, 2019, the Honorable Elizabeth T. Hey ordered Hadjiev detained based both on the strength of the government's case and the government's representation that an Immigration and Customs Enforcement ("ICE") detainer would be lodged against him. The detainer was later lodged based on the allegation that Hadjiev, a Bulgarian citizen, entered into a fraudulent marriage to apply for U.S. citizenship.

---

[1] Superseding Indictment [Doc. No. 18].

On December 7, 2019, Hadjiev filed a Motion for Reconsideration of Bail.[2] Hadjiev explained that although he is a citizen of Bulgaria, he has lived in the United States for the last twenty years; his father is a green card holder and both of his sisters are U.S. citizens; he has no ties to other countries; he is not charged with a crime of violence; and he is not a danger to the community. The government argued that Hadjiev's undocumented status, combined with the strength of the case against him, increases the risk that he will not appear as required by the Court.[3] On December 9, the Honorable Carol Sandra Moore Wells denied Hadjiev's motion for reconsideration.

On February 5, 2020, the Court set a jury trial for May 21, 2020.[4] On March 17, 2020, Hadjiev filed a Motion for Release from Custody Based on Changed Circumstances; New Covid-19 Public Health Concerns pursuant to 18 U.S.C. § 3142(i).[5] Hadjiev argued that he is "among the very few detainees who should be released *temporarily*, pending his fast-approaching trial (5/21/2020), in light of the public health crisis."[6] Specifically, Hadjiev asserted that he should be released because he is "(1) nonviolent; (2) has no criminal record; (3) is not charged with a drug, gun, or violent crime; (4) who but for his immigration detainer would likely have been released pretrial; and (5) who *may* have a genetic susceptibility to pneumonia and therefore COVID-19."[7] In support of his claim that he may have a genetic predisposition to pneumonia, Hadjiev attached an exhibit that he purported was a translation of his father's Bulgarian medical records, showing that his father had contracted bilateral bacterial pneumonia

---

[2] Doc. No. 21.

[3] Government's Opposition to Motion for Pretrial Release [Doc. No. 23] at 5.

[4] Doc. No. 26.

[5] Doc. No. 29.

[6] *Id.* at 4.

[7] *Id.*

in 2019.[8] Hadjiev further asserted that "[s]tudies suggest that persistent mortality from community-acquired pneumonia may be due to genetic predisposition."[9] Two days later, on March 19, 2020, Hadjiev filed a Notice of Supplemental Medical Records containing what he asserted was a translated Bulgarian medical record from 1981 demonstrating that Hadjiev had been diagnosed with bronchopneumonia.[10] Thus, Hadjiev asserted that because "[e]arly pneumonia may be a major risk factor for adult chronic obstructive pulmonary disease," he is particularly susceptible to COVID-19.[11] The Court held a telephone conference on Hadjiev's motion that day, where defense counsel explained that in addition to temporary release from the custody of the Bureau of Prisons ("BOP"), Hadjiev was seeking an order to restrain ICE from detaining him upon release. The Court was not prepared to rule during the conference on this request to restrain ICE, over which it was not clear that the Court had jurisdiction. The Court held a hearing by videoconference on April 27, in which Hadjiev, Hadjiev's counsel, and counsel for the government participated.

## II.     DISCUSSION

"The Bail Reform Act generally requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that 'no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the

---

[8] Ex. A, Motion for Release from Custody Based on Changed Circumstances [Doc. No. 29-4].

[9] Motion for Release from Custody Based on Changed Circumstances [Doc. No. 29] at 11 (citing Waterer GW, Wunderink RG, *Genetic susceptibility to pneumonia*, Clin Chest Med. (March 2005) https://www.ncbi.nlm.nih.gov/pubmed/15802163).

[10] Doc. No. 30.

[11] *Id.* at 2 (quoting Johnny Y.C. Chan, Debra A. Stern, Stefano Guerra, Anne L. Wright, Wayne J. Morgan and Fernando D. Martinez, Pneumonia in Childhood and Impaired Lung Function in Adults: A Longitudinal Study, Pediatrics April 2015, 135 (4) 607-616; DOI: https://doi.org/10.1542/peds.2014-3060).

community[.]'"[12] Section 3142(i) provides that: "[t]he judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[13] "The defendant bears the burden of showing that he is entitled to release under § 3142(i),"[14] and courts have used this provision "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries."[15] "A defendant seeking temporary release under § 3142(i) has already been subject to a Court determination that his pretrial detention was warranted on the grounds that no condition or combination of conditions would reasonably assure he is not a flight risk and/or not a danger to the community."[16] "Accordingly, the Court takes into consideration whether Defendant has presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order."[17] Hadjiev argues that COVID-19 is a changed circumstance that provides a compelling reason for his release.

COVID-19 is a respiratory disease spreading from person to person "mainly through respiratory droplets produced when an infected person coughs or sneezes. These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs.

---

[12] *United States of America v. Rinaldi*, No. 18-279, 2020 WL 1984299, at *2 (M.D. Pa. Apr. 27, 2020) (quoting 18 U.S.C. § 3142(e)(1)).

[13] 18 U.S.C. § 3142(i).

[14] *United States v. Deshields*, No. 19-99, 2020 WL 2025377, at *2 (M.D. Pa. Apr. 27, 2020) (citing *United States v. Cox*, No. 19-271, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020)).

[15] *United States v. Hamilton*, No. 19-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993)).

[16] *United States v. Boatwright*, No. 19-301, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020) (citing *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020)).

[17] *Id.* at *5 (citing *Clark*, 2020 WL 1446895, at *3).

Spread is more likely when people are in close contact with one another (within about 6 feet)."[18]
"On March 11, 2020, the World Health Organization declared the novel coronavirus known as
COVID-19 a pandemic."[19] As of May 13, 2020, the Centers for Disease Control and Prevention
reported a total of 1,364,061 cases of COVID-19 in the United States with 82,246 total deaths
caused by the virus.[20] In Pennsylvania, as of May 13, 2020, over 58,698 people have contracted
COVID-19, and over 3,943 people have died from it.[21] "Many conditions and treatments can
cause a person to have a weakened immune system," which leads to a "reduced ability to fight
infectious diseases, including viruses like COVID-19."[22]

The Third Circuit recently explained that "[w]hile the COVID-19 pandemic has given
rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is
imperative that they continue to carefully and impartially apply the proper legal standards that
govern each individual's particular request for relief."[23] Reiterating the need for particularity
when evaluating claims for relief based on COVID-19, the Third Circuit explained in another
case that "the mere existence of COVID-19 in society and the possibility that it may spread to a
particular prison alone cannot independently justify . . . release."[24] Therefore, "the court must
make an individualized determination as to whether COVID-19 concerns present such a

---

[18] Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=https% 3A% 2F% 2F www.cdc.gov% 2Fcoronavirus% 2F2019-ncov% 2Fprepare% 2Ffaq html#Coronavirus-Disease-2019-Basics (last visited April 29, 2020).

[19] *Rinaldi*, 2020 WL 1984299, at *2 (citation omitted).

[20] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us html (last visited May 13, 2020).

[21] Pennsylvania Department of Health, *COVID-19 Data for Pennsylvania*, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited May 13, 2020).

[22] Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk html#chronic-lung-disease (last visited April 29, 2020).

[23] *United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

[24] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)

compelling reason in a particular case that temporary release is necessary."[25] In determining whether the COVID-19 pandemic supports release under § 3142(i), courts have considered four useful factors: "(1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others."[26]

After considering these factors, and all relevant circumstances, the motion will be denied. Although Hadjiev has no prior convictions, the crime is non-violent and does not involve narcotics, and Hadjiev has shown that he has a place to live if released,[27] the concerns animating the original grounds for detention, in particular the ICE detainer, remain unchanged.[28] Thus, in the absence of the COVID-19 pandemic, the Court would not revisit the decisions ordering pretrial detention.

Hadjiev's "COVID-19 concerns are general and speculative."[29] His alleged health concerns—that the Bulgarian records allegedly showing that he and his father have had pneumonia make him predisposed to contract COVID-19 in a prison setting—are not supported by the record. The Court cannot determine the accuracy of the translated Bulgarian medical records and there is reason to question whether any of the records apply to Hadjiev himself.

---

[25] *Boatwright*, 2020 WL 1639855, at *5 (citing *Clark*, 2020 WL 1446895, at *3).

[26] *See e.g.*, *Clark*, 2020 WL 1446895, at *3; *USA v. Cazares*, No. 18-466-1, 2020 WL 1955730, at *3 (N.D. Cal. Apr. 23, 2020); *United States v. Palazzola*, No. 19-20235, 2020 WL 1984116, at *2 (E.D. Mich. Apr. 27, 2020) (quoting *United States v. Smoot*, No. 19-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020)); *Deshields*, 2020 WL 2025377, at *3; *Boatwright*, 2020 WL 1639855, at *5; *United States v. Love*, No. 17-342, 2020 WL 1984313, at *6 (M.D. Pa. Apr. 27, 2020).

[27] *See* 18 U.S.C. § 3142(g).

[28] *See Boatwright*, 2020 WL 1639855, at *6 (citing *United States v. Dodd*, 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020); *see also United States v. Lee*, No. 19-298, 2020 WL 1541049, at *4 (D.D.C. Mar. 30, 2020).

[29] *Deshields*, 2020 WL 2025377, at *4; *see also United States v. Crowder*, No. 17-00291-1, 2020 WL 1891878, at *5 (M.D. Pa. Apr. 16, 2020) (citation omitted).

Hadjiev asserts that a supplemental medical record shows that he contracted bronchopneumonia as a child, but he and his father share the same name, and the diagnosis of bronchopneumonia is from July 9, 1981—just fifteen days after Hadjiev was born. The Court cannot conclude that this 1981 record reflects the medical condition of Hadjiev rather than his father, particularly in the absence of any medical records for Hadjiev from the intervening decades that show any relevant health conditions that would put him at an enhanced risk from COVID-19.[30] Considering that there have been no confirmed inmate cases of COVID-19 at the FDC and the evidence presented by the government of the measures that the BOP is taking to mitigate the risk of COVID-19 transmission at the Philadelphia FDC,[31] Hadjiev has not shown a compelling individualized health concern justifying release under § 3142(i).

Moreover, the ICE detainer presents a clear bar to temporary release. "Where an alien is in the custody of another governmental entity, ICE officers may issue a detainer. Via the detainer, ICE informs the agency that it seeks custody of such an alien for the purpose of arresting and removing the alien."[32] The Third Circuit recently held that a court's decision to

---

[30] Moreover, even assuming the veracity of Hadjiev's representations about the medical records, Hadjiev has not adequately demonstrated that his past pneumonia infection constitutes a COVID-19 risk factor. Hadjiev presents a study stating that "[e]arly pneumonia may be a major risk factor for adult chronic obstructive pulmonary disease" but there is no evidence that Hadjiev, a 39-year-old man, has ever suffered from this disease. Notice of Supplemental Medical Records [Doc. No. 30] at 2 (quoting Chan, Stern, Guerra, Wright, Morgan and Martinez, *Pneumonia in Childhood and Impaired Lung Function in Adults: A Longitudinal Study*). Nor does the asserted fact that Hadjiev's father contracted pneumonia for the first time in 2019, and survived, indicate any hereditary disease or increased risk of mortality. *See* Ex. A, Motion for Release from Custody Based on Changed Circumstances [Doc. No. 29-4] ("Past diseases – denies.").

[31] *See United States v. Johnson*, No. 17-20489, 2020 WL 1821099, at *3 (E.D. Mich. Apr. 10, 2020) (modifying the four-factor test to consider the actual conditions of the facilities where the defendant is being held, and the measures to being taken to prevent the outbreak of COVID-19).

[32] *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 526 (2019) (internal quotations and citations omitted).

release a criminal defendant pursuant to the Bail Reform Act does not prevent ICE from enforcing a detainer.[33]

Hadjiev does not dispute that ICE would seek to enforce its detainer, but argues that the Court has jurisdiction to preemptively restrain ICE from doing so. Hadjiev relies on *Thakker v. Doll*, a decision from the Middle District of Pennsylvania where the district court recently granted a temporary restraining order filed, pursuant to a 28 U.S.C. § 2241 petition for writ of habeas corpus, by a number of ICE detainees who had a high risk of contracting COVID-19.[34]

*Thakker* does not provide support for this Court to exercise jurisdiction for two reasons. First, "[h]abeas jurisdiction under § 2241 to challenge immigration actions only extends to persons who are actually 'in custody' of immigration officials," and Hadjiev is currently in the custody of BOP.[35] Second, even if the Court could preemptively exercise § 2241 habeas jurisdiction, Hadjiev and the government agree that ICE would likely detain Hadjiev at the York County Prison, which is beyond the borders of the Eastern District of Pennsylvania and therefore beyond this Court's jurisdiction under § 2241.[36] Therefore, because Hadjiev has not shown that

---

[33] *See id.* at 245–47; *see also United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019); *United States v. Patel,* No. 20-14001, 2020 WL 1698785, at *4 (D.N.J. Apr. 8, 2020).

[34] No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020). It is noteworthy that the court in *Thakker* subsequently ruled that the detention facilities, including York County Prison, had made significant progress in mitigating the risk of COVID-19, and denied the motion for a preliminary injunction except for certain petitioners who showed they were at particular risk or presently ill. *See id.* at Doc. No. 89 (entered Apr. 27, 2020) and Doc. No. 92 (entered Apr. 28, 2020).

[35] *Drabovskiy v. U.S. Dep't of Homeland Sec.*, No. 14-451, 2014 WL 12493327, at *3 (M.D. Pa. Mar. 12, 2014), *report and recommendation adopted in part*, No. 14-451, 2014 WL 11395647 (M.D. Pa. Mar. 24, 2014), *aff'd*, 573 F. App'x 93, 94 (3d Cir. 2014) ("Any claims for immigration detention after the completion of his sentence are premature. Although he complains of an immigration detainer, a detainer is not equal to custody."); *see also Green v. Apker*, 153 F. App'x 77, 79 (3d Cir. 2005) (citing *Garcia–Echaverria v. United States*, 376 F.3d 507, 510–11 (6th Cir. 2004); *Zolicoffer v. United States Department of Justice*, 315 F.3d 538, 541 (5th Cir. 2003) ("According to most courts which have considered the custody question, a prisoner who is serving a criminal sentence is not in BICE custody simply because the BICE has lodged a detainer against him with the prison where he is incarcerated.")).

[36] *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017) (holding that jurisdiction under § 2241 lies in the district where the petitioner is confined); *see also Champagne v. Warden Lewisburg USP*, 794 F. App'x 143, 145 n.1 (3d Cir. 2019) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)); *Banks v. Hollingsworth,* No. 00-230, 2013 WL 2245637, at *1 (E.D. Pa. May 22, 2013).

the Court would have jurisdiction to interfere with ICE acting on the detainer, a temporary release from BOP custody would not mitigate his COVID-19 risks.

### III.    CONCLUSION

The Court understands that COVID-19 may present severe risks to those detained in the close quarters of federal custody. Already there have been serious outbreaks across the county, with over 2,800 federal inmates and 260 BOP staff testing positive for COVID-19, and 51 inmates having died.[37] Nonetheless, applying the individualized review of Hadjiev's claim, as required by the Third Circuit, and based on the ICE detainer and other grounds for Hadjiev's detention, the lack of specificity of his stated COVID-19 concerns, the generalized risk that COVID-19 may affect the FDC is not a "compelling circumstance" justifying Hadjiev's release. However, "[b]ecause the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling circumstances justifying Hadjiev's release.[38] An order will be entered.

---

[37] Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited May 13, 2020).

[38] *Lee*, 2020 WL 1541049, at *7.